OTTO H. BOECK et al., Appellees, v. MODERN WOODMEN OF AMERICA, Appellant.

**APPEAL AND ERROR:** Reversal—Retrial—Law of Case. A holding on appeal that stated that evidence (a) presented a jury question, or (b) established a complete defense to the claim sued on, necessitates the same holding on a subsequent appeal which presents substantially the same evidence.

*Appeal from Floyd District Court.*—C. H. KELLEY, Judge.

APRIL 1, 1918.

ACTION at law upon a benefit certificate issued by the defendant, a fraternal insurance society. Two defenses were pleaded. There was a verdict for the plaintiffs, and the defendant appeals.—*Reversed.*

*Truman Plantz, Geo. G. Perrin,* and *J. C. Campbell,* for appellant.

*Senneff, Bliss & Witwer,* for appellees.

EVANS, J.—I. Paul Boeck died November 28, 1909. At the time of his death, he was a member of the defendant society. The benefit certificate was payable, in the first instance, to the father and mother of the insured. Both of these having died before the insured, the plaintiffs herein,

being the brothers and sisters and only heirs at law, claim as such under the terms of the policy. Boeck became a member of the order on December 28, 1898. The first defense is predicated upon alleged fraudulent representations, and a breach of warranty made in his application, whereby he reported himself as never having been intoxicated, and whereby he reported his daily consumption of liquor as a "glass of beer a week." It is averred in the answer that Boeck had been intoxicated prior to such date, and that he did consume a greater quantity of liquor daily than therein reported, and that he thereby breached his warranty, as therein made. Proof was introduced in support of this defense. It is urged by the defendant that such proof was conclusive, and entitled the defendant to a directed verdict. The case was before us on a former appeal (162 Iowa 159). We held at that time that, as to this defense, the state of the evidence was such as entitled the plaintiffs to go to the jury. The evidence in the present record is not substantially different from that in the former, and we must, therefore, treat our former holding as decisive of the question now.

II.   The second defense was predicated upon Section 14 of the certificate of insurance, as follows:

"Prohibition against Intemperance. If any member of this society, heretofore or hereafter adopted, shall become intemperate in the use of intoxicating liquors, or in the use of drugs or narcotics, or if his death shall result directly or indirectly from his use of intoxicating liquors, drugs, or narcotics, then the certificate held by said member shall by such acts become and be absolutely null and void, and all payments made thereon shall be thereby forfeited."

It is averred that the death of Boeck did result from his use of intoxicating liquors, and much testimony was introduced in support of the averment. It is urged by the defendant that this evidence was conclusive, and entitled

the defendant to a directed verdict.   The same question was
before us on the former appeal, wherein we sustained the
defendant's contention as to this defense and reversed
the case accordingly.   The evidence in that regard was quite
fully discussed in the opinion on the first appeal, and the
discussion need not be repeated here.  162 Iowa 163, 164.   It
is contended for the plaintiffs that the evidence in the pres-
ent record is materially different from that in the former,
and that the former opinion is, therefore, not necessarily
controlling.   This is the crux of the present appeal.   With
some exceptions, to be noted, the evidence introduced at the
last trial was read from the transcript of the former trial.
Some of the defendant's witnesses were subpoenaed for fur-
ther cross-examination by the plaintiffs.   Also, a medical
expert for the plaintiffs answered a hypothetical question.
Were the controlling facts in the case materially modified
by this additional evidence?  These facts, stated briefly,
are that Boeck was a confirmed inebriate, for several years
prior to his death.   He had taken the Keeley cure at one
time.   Later, in January, 1907, his father, the then bene-
ficiary of his insurance certificate, had filed information
against him as an inebriate, and he was adjudged to be such,
and sent to the asylum at Knoxville, where he remained for
some months.   He returned again to his home in the vicin-
ity of Charles City, and after a few months, resumed his
drinking habits.   He was an unmarried man, forty years
old, at the time of his death.   After his return from the
asylum, he does not appear to have engaged in any partic-
ular line of occupation.   In November, 1909, he went to
Independence, and engaged a room at a rooming hotel.
He remained at Independence for about a week.   He had
no apparent business there, except to visit the saloons,
which were then in operation at such place.   He did visit
one or more of them constantly, during each day.   He at-
tracted the attention of the city marshal, who was a wit-

ness upon the trial. As a witness, he testified that he noticed Boeck as one who was drinking heavily, and who was intoxicated much of the time. On two or three occasions, the marshal ordered him to his room. Saturday afternoon, November 28th, he asked his hotel landlord, who was a retired physician, for cocaine. He was at that time "trembling." Being refused the cocaine, he went down the street. This was the last time that the landlord saw him. Later in the night, the landlord heard him return to his room. The marshal saw him in the evening, and observed that he was then intoxicated. Sunday morning, he was found dead upon his bed. He was fully clothed. His only companions in death were a bottle of whiskey and an empty whiskey bottle and a bottle of milk. The relatives were notified, and some of the plaintiffs herein came. A coroner's inquest was held, and the same was held open until the arrival of the relatives. The verdict of the coroner's jury was that he came to his death from heart failure, caused by excessive indulgence in liquor. The plaintiffs caused proofs of death to be made to the defendant society. In such proof, the cause of death was given as heart disease, caused by "alcoholism." The report of the coroner's inquest was also attached. These proofs were verified by the affidavit of each of the plaintiffs herein.

The foregoing comprise the material and important facts upon which the former opinion was based. We find nothing in the additional oral cross-examination of the defendant's witnesses which was had at the last trial which modified any of these facts to any degree. The plaintiffs introduced the testimony of some additional witnesses. One of these was the saloon keeper at whose saloon Boeck had spent the greater part of the last week of his life. The purport of his evidence is sufficiently indicated by the following quotations therefrom, which have been selected by

the plaintiffs in their brief, and from which we quote the same.

"I never to my knowledge saw Mr. Boeck in my saloon when he appeared to be under the influence of liquor or drinking excessively. I saw him in there at different times; I observed him drinking there. I saw him take some drinks. * * * Boeck was usually in the saloon in the evening. I have seen him there during the day, but not as often as later on, and I couldn't say that he was in there each day, because I hardly think he was. I became acquainted with him in a passing way. He would take beer, and sometimes whiskey. We didn't permit persons to remain around in our place intoxicated. We made it a rule when we could detect or discover they were intoxicated not to have them in the place. * * * I couldn't say whether he was in my saloon on Saturday night before he died. In the conduct of my business, I would not sell a man I thought was drinking too much."

The witness McGready was the doctor who was called by the coroner at the inquest. He also made the affidavit pertaining to the cause of death which was attached to the proofs of death and sent to the defendant society by the plaintiffs herein. He testified, in substance, that his opinion was not formed upon an observation or examination of the dead body, and that he could not have formed any opinion as to the cause of death upon such observation, and that he formed his opinion upon the facts adduced at the inquest. He also testified that he wanted to make a post-mortem examination, but the relatives would not permit it.

A medical witness, Burke, was called by plaintiffs. A lengthy hypothetical question, purporting to recite the facts of the case, was propounded to him, and was answered by him. In the additional testimony thus introduced, we are unable to find anything that affects the important facts considered by us in our former opinion. The testimony of the

first witness simply sets forth his standards of conduct as a saloon keeper. Such facts as appear in his testimony corroborate the claim of inebriety. Boeck was a stranger to him, and a stranger in the city of Independence, and had no business there except to patronize its saloons. There is nothing in McGready's testimony which impeaches or contradicts the verdict of the coroner's jury. Such a verdict always is, or ought to be, based upon the facts developed by evidence.

The medical expert evidence was based purely on a hypothetical question. The question was vulnerable, but we pass that. The question was so framed as to call for the opinion of the witness on the evidence in the case as a whole. It would be difficult to say that a medical expert would be any more competent to answer it than would any other intelligent witness or juror. Be that as it may, the answer of the witness added nothing to the case. At the close of the hypothetical statement, which is too lengthy to be set forth herein, the following questions and answers appear:

"Would you, from that history, Doctor, form an opinion as to whether or not, in your judgment, this man, thus found dead under the conditions and the history as I have given it,—whether he died from the use of alcohol, either directly or indirectly? Answer that by yes or no. A. No, I would not. Q. I say, could you form an opinion? A. Form an opinion as to what was the cause of his death? Q. Yes, have you an opinion? I am asking you whether you have an opinion,—not what it is, but— A. Yes, I have. Q. * * * and I will now ask you, Doctor, whether or not the finding of the man dead, under those conditions,—whether you would say that his death was due, directly or indirectly, to the use of alcohol? * * * A. No, I would not. Q. You say it didn't,—is that what you mean? A. Yes, sir, under the circumstances."

Disregarding the ambiguity of the foregoing answers,

the evidence, such as it was, was quite conceded away in the cross-examination.   On redirect examination, the final summing up of the witness was as follows:

"A.   In order to cause a death from alcohol, you would have to have—they have to take a pretty excessive amount of alcohol.   Deaths from alcohol,—that is, the immediate deaths from alcohol,—are rare, and they are not so rare, but then they are drawn over a considerable period of time, usually several hours.   An alcoholic will go into a coma and stay in a coma for several hours.   As far as immediate quick death from alcohol is concerned, there are not so many of them, in proportion to the amount of alcohol that is consumed."

It would be trifling with judicial candor to say that such evidence changed, in any material sense, the record as it appeared before us on the former appeal.   We must, therefore, treat the former opinion as controlling, upon the present record.   A verdict should have been directed for the defendant, upon the ground here indicated.   The judgment is, accordingly,—*Reversed.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.