E. C. NOYES, Appellee, v. DES MOINES CLUB, Appellant.

**APPEAL AND ERROR:** Law of Case. A holding, on appeal, that
1   a jury question was presented on the issues of negligence and
contributory negligence, is the law of the case on all future ap-
peals on substantially the same evidence.

**WITNESSES:** Contradicting Irrelevant Matter. It is not necessa-
2   rily reversible error for the court to permit the contradiction
of immaterial and irrelevant matter voluntarily developed by
both parties.

**NEGLIGENCE:** Instructions—Degree of Care, etc.—Instructions as
3   to the degree of care required in the maintenance of a gate to
an elevator, and as to the necessity of notice, express or im-
plied, of the defective condition thereof, reviewed, and held to
fully protect the defendant.

**TRIAL:** Excessive Verdict—$8,000. On the issue whether a verdict
4   is legally excessive, some fair consideration must be given to
the recognized nation-wide change in economic conditions. Ver-
dict of $8,000 for very serious personal injury held nonexcessive.

*Appeal from Polk District Court.*—HUBERT UTTERBACK,
Judge.

JANUARY 27, 1919.

REHEARING DENIED MAY 21, 1919.

ACTION for damages. Verdict for plaintiff. Defendant
appeals. For statement of facts, see *Noyes v. Des Moines
Club,* 178 Iowa 815.—*Affirmed.*

*Parker, Parrish & Miller* and *C. Woodbridge,* for ap-
pellant.

*E. P. Hudson, R. L. Hudson,* and *W. L. Smith,* for ap-
pellee.

STEVENS, J.—I. This is the second time this case has
been before us on appeal. Upon the former trial, the court
directed the jury to return a verdict for defendant, upon

the ground that no negligence was shown.

**1. APPEAL AND ERROR: law of case.** The question of plaintiff's contributory negligence was also urged upon that appeal.

A careful comparison of the record upon this and the former appeal, reveals but little difference therein. Some additional evidence, largely cumulative in character, was offered, but this does not tend materially to remove the conflict.

The court held,' upon the former appeal, that the cause should have been submitted to the jury; and, as the question both of defendant's negligence and plaintiff's contributory negligence was involved and passed upon by the court, the holding there announced is decisive and binding upon this appeal. *Boeck v. Modern Woodmen of America*, 183 Iowa 211; *Hawthorne v. Delano*, 183 Iowa 444.

II. Counsel for defendant offered many requests for instructions, all of which were overruled. We are unable to discover any prejudicial error of the court in this respect. Several of the requested instructions were argumentative in character, and gave too much prominence to particular items of evidence. While some of the suggestions therein set forth might properly have been included in the court's charge, yet, taken as a whole, the instructions given by the court were reasonably full and complete, and fairly submitted the case to the jury. An extended discussion of the errors relied upon in the refusal to give the offered instructions is not called for.

III. Counsel for plaintiff, upon cross-examination of a witness, elicited evidence regarding a conversation between the witness and plaintiff regarding the condition of the automatic elevator gate at a time sub-

**2. WITNESSES: contradicting irrelevant matter.** sequent to the injury. The answers, to some extent, left the meaning of the witness in doubt; whereupon defendant's attorney recalled the witness, and had him detail the conversation.

Plaintiff was then permitted, over defendant's objection, to take the stand and give his version of the conversation, which resulted in leaving the evidence in direct conflict as to what occurred. As the conversation was gone into by counsel for both parties, and their respective versions placed before the jury, in the absence of a showing of prejudice, there should not be a reversal upon this ground.

IV. Exceptions were also taken to the court's ninth instruction. The ground of the exception here urged was included in one of defendant's requested instructions. The instruction complained of placed upon the

3. NEGLIGENCE: instructions: degree of care, etc.

defendant the duty to exercise reasonable and ordinary care in maintaining the gate at the entrance to the elevator in a reasonably safe condition. The jury was specifically told that it was not the duty of defendant to furnish an operator for the elevator and gate, nor to maintain someone constantly in charge thereof. The duty to exercise such care as a reasonably prudent person would have exercised in inspecting the gate was enjoined upon the defendant. The court also told the jury that, unless it appeared from the evidence that defendant had notice that the gate was not in place, or not in working order, for a sufficient length of time prior to the accident to have enabled the same to be remedied, the defendant could not be charged with negligence. The evidence was in conflict as to whether the gate had previously failed to work. The burden was placed upon plaintiff, under the instruction, to show that the defendant knew the gate was not in place at the time of the accident, or had been out of working order for such a length of time that, by the exercise of ordinary care, defendant should have obtained knowledge thereof, and failed to remedy the same. The instruction was not unfavorable to defendant.

V. The verdict, which was for $8,000, is vigorously assailed by counsel as excessive, and the result of passion

or prejudice on the part of the jury. We find nothing in the record to sustain the latter claim. No testimony whatever was offered, and the record discloses nothing as happening during the trial, from which it could be inferred that the jury might have been influenced, in reaching their conclusion, by ulterior motives or influence. Prior to the accident, plaintiff, who was 26 years of age, was earning $70 per month, and at the time of the trial, $65 per month. His former weight was about 178 pounds; but since the accident, he has weighed from 138 to 144 pounds. He fell a distance of 16½ feet, striking upon a hard floor. He appears to have been partially conscious, when rescued, and claims to have suffered severe pain from his injuries. He was confined to his bed for about 10 days, and was unable to work for several weeks. The physician who attended him testified that he was bruised in several places, principally on the back. He suffered a severe contusion of the tissues of the back, between and a little above the shoulder blades. His scalp was cut in several places; the lower part of the cervical, and the upper part of the dorsal, vertebrae were injured. This witness further testified that, at the time of the last trial, plaintiff was suffering from the effects of some of the injuries; that he has fever daily, and if this continues, will probably have a permanently diseased condition of some of the bones of the vertebrae; that he has a large curvature at the junction between the dorsal and cervical vertebrae. He gave it as his judgment that the condition of the injured vertebrae indicates tubercular trouble. Other experts called on behalf of plaintiff testified to the curvature of the spine; that he is slightly stooped; that he has an abnormal temperature; and Dr. Ely testified that he examined him, shortly before the trial, and found his pulse very rapid; that it was 120 when the examination began, and rose to 148 before it was concluded.

4. Trial: excessive verdict: $8,000.

This, however, may be accounted for, in part at least, by nervousness due to the examination.

All of the expert witnesses testified to symptoms of tubercular infection. Numerous witnesses who had worked with plaintiff prior to the accident testified that he was not then stooped, and that he is not able to do as heavy work as formerly. He complains of pain in his back, and his wife testified that his sleep is often disturbed; that he lies with a pillow under his back, and frequently is so exhausted when he returns from his day's labor that he immediately retires; and that she always applies liniments and alcohol, with rubbing, before he retires; that he at times has difficulty in breathing, has dizzy spells, and a numbness in one arm and hand.

The immediate loss of time and earnings, together with the pain and suffering endured, would hardly justify a verdict in plaintiff's favor of $8,000. His earning capacity does not appear to have been materially lessened, but he cannot follow his former occupation. The question, however, whether his injuries are of a permanent nature, and if so, the probable extent thereof, is very material upon this point. At one time, he worked at the carpenter's trade; but, at the time of the trial, claimed he was unable to follow this line of work, and that he has, since the accident, worked at somewhat reduced wages. If it were conceded that the injuries referred to in the evidence of the expert witnesses were reasonably certain to result in tuberculosis, probably no one would complain of the verdict as excessive. The physicians who examined him immediately before the trial found him nervous, but were unable to determine whether it was due to his injuries, or whether it was temperamental. It is unfortunate that there is no definite standard by which expert witnesses could have determined whether the injuries complained of will ultimately result in tuberculosis. Doubtless, the best the medical experts could do was to ex-

press an opinion, based upon physical and symptomatic conditions. None of them was willing to say that he would ultimately permanently recover, but all were rather inclined to the opinion that the probabilities were that the diseased vertebrae would, in time, become tubercular. The credibility of the witnesses was for the jury, and we cannot assume that the conditions described or conclusions expressed by the physicians were unworthy the belief of the jury. Their testimony is not disputed. We can easily perceive how some of the symptoms manifested may proceed from psychological causes, but the diseased condition of the back, the curvature of the spine, increased temperature, serious loss of weight, and the possibility of tubercular infection cannot be accounted for in this way. The question of the extent of plaintiff's injuries, whether permanent or otherwise, together with the possibility that a fatal disease may yet follow, were all properly questions for the jury; and, under the evidence, it might have found that the injuries were permanent in character, and that there was a reasonable probability of tubercular infection. *Reed v. Chicago, St. P., M. & O. R. Co.*, 74 Iowa 188; *Latman v. Douglas & Co.*, 149 Iowa 699.

We are invited to make comparison of the verdict returned by the jury herein with verdicts held excessive in numerous cases from other jurisdictions. We have examined a large number of the authorities cited, and some of them may not be in entire accord with the conclusion reached by us in this case; but conditions have changed greatly since many of the cited cases were decided. The immense increase in the cost of living and in all the necessities of life must be, to some extent, taken into consideration in determining whether the verdict was, in fact, excessive. It may be that plaintiff will entirely recover, and suffer little or no permanent impairment of his health, comfort, or earning capacity; but, under the evidence, the jury

could reasonably have found otherwise. The question was peculiarly for the jury, and we.do not feel that same should be interfered with by this court.

Other questions discussed have been considered, but as, in our opinion, they present no sufficient reason for reversing the lower court, it will not be profitable to discuss them.

Since we find no error in the record justifying a reversal, the judgment of the court below is—*Affirmed.*

WEAVER, GAYNOR, and PRESTON, JJ., concur.