[No. 15994.   Department Two.   December 11, 1920.]

WARREN R. McCREEDY *et al., Respondents,* v. GEORGE FOURNIER *et al., Appellants.*[1]

HIGHWAYS (56-1)—NEGLIGENT USE—EVIDENCE—ADMISSIBILITY. In an action for damages from an automobile collision, it is admissible to show swerving, ziz-zag tracks on the road leading up to the immediate scene of the accident, where the witness testified that there had been a small mist or rain on the pavement and there were no other tracks noticeable.

DAMAGES (47)—FUTURE OR CONTINUED SUFFERING. In an action for personal injuries, necessitating an operation upon one eye and nearly destroying its usefulness, the eye specialist who performed the operation may testify as to the probability of sympathetic affection of the other eye.

HIGHWAYS (57)—NEGLIGENT USE—EVIDENCE—ADMISSIBILITY. The relative position of two overturned automobiles may be shown upon an issue as to the speed of the automobiles and as to the side of the highway on which the collision occurred.

EVIDENCE (132)—PHOTOGRAPHS—ADMISSIBILITY. Photographs of the scene of an accident are admissible where witnesses testify that the conditions on the road were essentially the same when taken as at the time of the accident.

TRIAL (136) — VERDICT — SPECIAL FINDINGS. Error cannot be predicated on the refusal to submit special interrogatories to enable the jury to segregate damages showing the amount of the liability of an indemnity company, where no indemnity company appeared in the action.

APPEAL (129)—OBJECTIONS—REQUEST FOR INSTRUCTIONS. Error cannot be assigned upon the failure to give a more specific instruction in the absence of any request therefor.

DAMAGES (80)—EXCESSIVENESS—INJURIES TO PERSON IN GENERAL. Present day factors and standards must be taken into consideration in determining the excessiveness of permanent personal injuries.

Appeal from a judgment of the superior court for King county, Tallman, J., entered January 23, 1920, upon the verdict of a jury rendered in favor of the

[1]Reported in 194 Pac. 398.

plaintiffs, in an action for personal injuries sustained
through an automobile collision.   Affirmed.

*James B. Murphy* and *Ward C. Kumm,* for appel-
lants.

*Stanley J. Padden,* for respondents.

MITCHELL, J.—Warren R. McCreedy and his wife
brought this action for damages on account of personal
injuries to both, and for injuries to their automobile,
occurring in a collision alleged to have been caused
by the negligent operation by the defendants, George
Fournier and Stanley Fournier, of their own automo-
bile on a county highway in King county.   There was
a jury trial, resulting in a verdict of $10,000 in favor
of the plaintiffs.   From the judgment on the verdict,
the defendants have appealed.

The collision occurred shortly after seven o'clock
on the morning of September 2, 1919.   The road, run-
ning east and west, was a well improved gravelled
highway, the traveled portion of which was variously
estimated at fifteen to twenty feet in width.   Respond-
ents were going east, appellants west.   As is usual in
such cases, there is a sharp conflict in the proof of the
respective parties as to most of the essential facts and
surroundings of and at the time of the collision.   How-
ever, it appears, from the bulk of the testimony on
both sides, there was a foggy condition of the weather
at that time and especially at the place the accident
happened.   It is the contention of the respondents that
the collision occurred well over on their right-hand
side of the road; that for some distance they had been
traveling on the right of the center of the road, at ten
or twelve miles an hour, until on seeing the approach-
ing car they slowed down to about five miles per hour
and turned about as far to the right as the roadway

permitted, when the collision occurred; that both head-lights of their car were burning; that the appellants were traveling on the wrong side of the road, at a speed in excess of thirty miles an hour, and were using no light of any kind. There is abundant evidence, much of it from wholly disinterested witnesses, to support these contentions, and as the verdict was in favor of the respondents we accept these as established facts.

It is claimed there was error in allowing a witness for the respondents to testify, over objections, that, about eight o'clock that morning, he approached the scene of the accident from the east (the same direction the appellants traveled), and noticed swerving zigzag tracks of an automobile driven on the left-hand side of the road, and that the tracks led up to the immediate scene of the accident. The objection urged is that such vital testimony should not have been allowed because there was proof of the passing of several other automobiles after the collision occurred and prior to the witness reaching the scene. But, in his argument, counsel overlooks the fact that the witness testified positively that there had been a small mist of rain and the dust had been settled; that he did not see any other tracks on the road that attracted his attention; that he noticed those tracks leading to the scene of the accident; that he traced the tracks to where respondents' car was on its right side of the road, around which the ground was torn up; and observed the continuation of the tracks of the automobile from the immediate scene of the collision and where the ground had been torn up, along the road to a point at which respondents' testimony shows appellants' car stopped after the collision. Further, counsel overlooks the fact that the proof he refers to, the passing of several automobiles, came from the appellants' witnesses after the

witness whose testimony is complained of had been completed. The evidence was clearly admissible; its weight was for the jury.

It is claimed the court committed error in admitting, over objections, the testimony of Dr. Hawley as to the future disability of Mr. McCreedy, who was so severely injured in the danger zone of the right eye that an operation including the stitching of the eye on the surface was necessary. Dr. Hawley is an eye specialist and performed the operation, and while he and a specialist called by the appellants both testified that the operation was entirely successful, it clearly appears the usefulness of the eye is nearly destroyed, permanently. The testimony objected to was an opinion by Dr. Hawley as to the danger or reasonable probability of sympathetic inflammation, technically known as ophthalmia, in the left eye, with the resultant necessity of removing the right eye. The objection urged is that it left the jury to give damages for consequences that were contingent, speculative, or merely possible. While Dr. Hawley admitted the trouble might never happen, he testified that it did occur in more than half of the cases. Among other things, he testified:

"Q. What is the probable result of the condition that exists in the eye as to taking this eye out? A. Sympathetic inflammation may arise. Q. In the other eye? A. Will arise. Q. Sympathetic inflammation in the other eye, is that what you mean? A. Yes, sir."

And again he said: "I think it very apt to happen." We think the evidence was proper to go to the jury under the rule in the case of *Gallamore v. Olympia*, 34 Wash. 379, 75 Pac. 978; *Holt v. School District No. 71*, 102 Wash. 442, 173 Pac. 335.

In addition, appellants are in no position to complain in this respect, for the testimony of their own

expert is to practically the same effect. Dr. Swift, a recent army surgeon and eye specialist, called by the appellants, testified that he examined Mr. McCreedy twice after the operation and after the removal of the stitches; that Dr. Hawley took exceeding good care of the case and got a nice result; that it was a very dangerous wound of the eye; and that, in the army, an eye injured such as this would be removed in ninety per cent of the cases to prevent sympathetic inflammation, while in civilian life his estimate of the reasonable probability of sympathetic inflammation was fifty per cent. Still further, among other things, he testified:

"A. But we know what makes it set up, and that is what I have been arguing to you. He must have another injury in order to have that set up, or he may get it from bad tonsils or teeth. If that man is put in a room and protected from injuries all his life, he won't get sympathetic ophthalmia. . . . If you take that man right here and strike him in the eye with the fist, although it wouldn't hurt the eye at the time, it might start sympathetic ophthalmia. Take that same man and let him have a half dozen bad teeth, and some day give him a paper to read, and he might develop a little irritation of the other eye and sympathetic ophthalmia set up. Mr. Padden: And lose both eyes? A. And lose both eyes. Q. What would be necessary in that case, Doctor, to prevent the loss of both eyes? A. You couldn't. You have to take the eye out, but you wouldn't prevent it. Q. The injured eye? A. The injured eye would have to come out, but that might not prevent it. Mr. Murphy: I think that is all."

No objections to the instructions to the jury upon this point are presented by the appellants.

The respondents' witnesses were allowed to testify relative to the positions of the two overturned automobiles after the accident. It is claimed this was preju-

dicial error.   Under the pleadings, there were issues as to the speed of the cars and whether or not the collision occurred on the side of the roadway.   Much of respondents' testimony showed considerable disturbance of the surface of the road at the place of the collision, and that their automobile was overturned practically at the spot on its right side of the road; and that the zigzag tracks of an approaching auto on its wrong side of the road led directly to the point of the accident, from whence the tracks of that car led off to the resting place of appellants' car.   For these reasons, and for others from which legitimate inferences might well be drawn, the evidence was proper for the jury's consideration.

It is claimed that photographs of the place at which the collision occurred were improperly admitted in evidence.   The photographs were made some time after the accident happened, and it is argued there had been changes in the surface of the road in the meantime.   But counsel overlooks the fact that respondents' witnesses, one of whom was present at the time the photographs were taken, testified that the road and its surroundings were essentially the same at both dates; while the testimony as to a change in the roadway came later on in the trial from appellants' witnesses, and amounted to nothing more than that there had been a scraping of the gravel on the road after the collision and after some rainfall.

It is contended the trial court erroneously refused to submit three requested forms of special verdicts, finding separately the respective amounts awarded as damages by reason of injuries to Mr. McCreedy, to his wife, and to their automobile, in the event the general verdict should be for the respondents.   The avowed purpose of making the requests, as stated by

counsel for appellants, in the absence of the jury, was that certain of the items only were covered by insurance and that "the defense was made on behalf of the insurance company as well as on behalf of the defendants in this action, representing both." But no insurance company appeared in the action, nor is there a word of evidence with regard to insurance. There was no error in refusing to submit the interrogatories to the jury.

The appellants are brothers and admitted they jointly owned the car they were using at the time of the accident. For months they had used it jointly going to and from their work, sometimes one, and at other times the other, driving it. They divided equally the expense of the up-keep and operation of the car, first paid for by either. It appears that George Fournier was driving at the time of the accident. There is evidence, though disputed, that Stanley Fournier was on the front seat with his brother. Stanley procured and supplied the car with the gasoline it was using at that time, and he testified that on the trip he directed George to turn on the spotlight and, just before the accident, inquired of his brother the reading of the speedometer. Among other things, the jury was instructed:

"If you find that the defendants at the time of the collision were both riding in said automobile, and at the time of the collision, or immediately prior thereto, the Dodge automobile was being driven by one of the defendants, and that the other defendant exercised some control over the manner in which the automobile was being driven, or if you find that the other defendant who was driving the automobile was the agent of the other defendant, then the defendant who was driving the automobile and the other defendant were and are equally responsible, if you find that the acts of

the driver of the defendants' automobile were the proximate cause of the collision."

It is claimed on behalf of Stanley Fournier that the instruction is faulty in failing to define that which constitutes agency. There is no contention that the matter of agency is not involved in the case, but only that the court should have told the jury the meaning of the word "agent." The contention is too technical. We have no doubt that the jury clearly understood the meaning of the word for the purposes of the case. The language used is essentially that found in the statute, Rem. Code, § 5562-33. The instruction complained of was given in writing, and if a more specific instruction upon the subject was desired, it should have been requested, to be in a position to assign error. *Zolawenski v. Aberdeen,* 72 Wash. 95, 129 Pac. 1090. No such request was made.

On behalf of each appellant, error is charged in the denial of his motion for a new trial. This raises no distinctive question of law or fact that we have not already disposed of, other than that the evidence is not sufficient to support the verdict and judgment, and that the verdict is excessive. There was abundant evidence to satisfy the jury in finding for the respondents, while the amount allowed them, under the facts in this case (which in this respect we need not set out) is amply warranted. In determining whether the verdict for personal injuries largely of a permanent character is excessive, we must, to some extent, take into consideration factors and standards greatly differing from those prevailing only a few years ago. *Noyes v. Des Moines Club,* 186 Iowa 378, 170 N. W. 461, 3 A. L. R. Ann. 610, note.

Judgment affirmed.

HOLCOMB, C. J., MOUNT, MAIN, and TOLMAN, JJ., concur.