[No. 26820.  Department One.  March 7, 1938.]

H. I. McQUARY *et al., Respondents,* v. GEORGE W.
PENKETH *et al., Appellants,* NAVY YARD
MOTORS *et al., Respondents.*[1]

*DuPuis & Ferguson,* for appellants.

*James W. Bryan, Jr.,* for respondents.

GERAGHTY, J.—This appeal is from a judgment, entered upon the verdict of a jury, against the appellants

[1]Reported in 76 P. (2d) 1024.

and in favor of the respondents, for personal injuries and property damage sustained, on January 13, 1937, when cars driven by the respondent H. I. McQuary and appellant George W. Penketh collided on a highway leading into Bremerton. The respondent John Hughes was injured while riding as a guest in the McQuary car at the time of the collision.

Admitting liability, the appellants seek to have the judgment reversed on the grounds (1) that the verdict was excessive, and (2) for abuse of discretion on the part of the trial court in prolonging the trial of the cause far into the night, and the denial of their motion for a recess until the next day to enable them to procure the attendance of witnesses who had been subpoenaed but did not appear at the trial.

The jury's verdict awarded McQuary eleven hundred dollars for personal injuries and damage to his automobile, and twenty-eight hundred dollars to Hughes for personal injuries sustained by him. While the appellants have assigned error on the amount awarded McQuary, little attention is devoted to it in the briefs. On the testimony, the jury could have found that the McQuary automobile, a 1937 Dodge, was damaged to the extent of six hundred dollars. This would leave five hundred dollars for personal injuries. This sum, while his injuries were not severe and did not entail any permanent disability, cannot be said to be excessive. His nose and forehead were cut, his right knee bruised, and his collar bone fractured.

The principal objection of the appellants is addressed to the award made to the respondent Hughes. After the collision, Hughes was brought to the office of a physician in Bremerton, who continued to treat him thereafter for his injuries. He was able to sit up in a car while being transported to the doctor's office. The doctor testified that, when he was brought

to his office, he appeared confused and hazy; his face was bloody, he had a laceration on his forehead, his false teeth had been broken, and his lips and tongue were cut. He did not then complain of any injury to his leg. After treatment, the doctor brought him home. He remained there and was nursed by his wife. Later, on January 18th, the doctor called to see him. His face was then swollen and his eyes blood-shot. He complained of headaches. On the 20th, the doctor examined him again, and there was not a great deal indicating any serious injury. On the 25th, he complained of pain in his left ankle and the toes of the foot were found discolored. An X-ray did not disclose any break, but there was a tremor. In February, his spinal fluid was tested and showed no particular change. It seemed to the doctor that this tremor indicated damage to the nervous system.

Respondent Hughes worked a little while, but was not able to continue. In March, he had short spells of fainting, and these continued up to the trial. The doctor estimated that he would be unable to work for a period of from six months to a year after the accident, and stands a chance of being permanently injured. The doctor stated that the tremor from which he suffers is not caused by any injury to the leg, but results from injury to the nervous system due to the accident. Another physician, who had examined him prior to the trial, testified that the respondent had a moderate tremor, particularly noticeable in the hand. In this doctor's opinion, the respondent was suffering from cerebral concussion and traumatic neurosis, and his disability, at the time of the trial, was complete, and that it would take from six months to a year, or maybe longer, for a full rehabilitation.

A physician called by the appellants, who examined the respondent on February 17th, found his reflexes

normal. An X-ray of the left ankle and leg was negative and showed no fracture. He had large varicose veins of the left leg, the leg that the respondent complained of. These often caused pain. A swelling disclosed in the ankle could result from the varicose condition, which had existed for a long time. Most of the symptoms were subjective.

The respondent Hughes, a plumber by trade, testified that his earnings averaged about two hundred dollars a month. He testified that he had a permit to work at his trade in the city of Bremerton, but did not have a license authorizing him to carry on business there as an employing plumber. The city plumbing inspector, called by the appellants, testified that the respondent had no license authorizing him to work in the city of Bremerton. The witness had heard that he had done work and had tried to catch him at it, but he had not been able to do so. Whatever may have been his right to practice his trade in the city of Bremerton, he could, of course, do work in the thickly settled districts outside the city. Other than the testimony of the plumbing inspector, there was no evidence contradicting his statement of his earnings.

While possessing the power to set aside a verdict where it is excessive or unjust, courts will be slow to disturb a verdict when the evidence is conflicting and the amount in itself does not indicate passion or prejudice. In a case like the present, the jury is dependent to a considerable degree upon the testimony of physicians. If the jury believed the testimony of the respondents' medical witnesses, the damages awarded could not be considered excessive.

The appellants cite cases where the court has reduced verdicts of juries. These cases may be helpful in so far as they illustrate underlying principles, but, in comparing verdicts expressed in terms of dollars,

it is necessary to take into consideration factors and standards greatly differing from those prevailing only a few years ago. *McCreedy v. Fournier,* 113 Wash. 351, 194 Pac. 398; *Allison v. Bartelt,* 121 Wash. 418, 209 Pac. 863; *Brammer v. Percival,* 133 Wash. 126, 233 Pac. 311. We cannot say that the verdict as to either of the respondents was so excessive as to evidence passion or prejudice.

■ The trial of the case was begun on the morning of May 10th. After the respondents had closed their case in the afternoon, the attorney for the appellants, after he had examined four of his witnesses, addressed the court, saying:

"I want to make a motion. The defendants must have the opportunity of completing their case on the day following, which would be May 11, and as the record will show that the defendants did not have an opportunity to start putting in their evidence until approximately 3:45 or 4:00 o'clock in the latter part of the day when it was hard to hold the witnesses together and a great number of their witnesses are in Bremerton, a distance of seven or eight miles. . . . THE COURT: Let me ask this question, when did those subpoenas go out? MR. DuPuis: 2:00 o'clock this afternoon. THE COURT: You were advised before 2:00 o'clock that the case had to be finished today. The calendar is set for tomorrow and following day and it has to be finished and any inquiry before today would have disclosed that it was our intention to finish the case in one day. MR. DuPuis: It has never been my custom to be where I had to finish a case in a certain allotted number of hours or minutes. I assumed that I had reasonable time to put in the evidence. I am alone in the case and the witnesses are miles away especially at this time of day it is hard to keep track of them. THE COURT: We don't try cases like they do in King County. I would like to give you an opportunity. We try to finish in a day and we expect the attorneys to have their witnesses here in the beginning of a case and if your witnesses were at the Court

House you could have been through by 6:30, that is so far as the testimony is concerned. . . . Motion will be denied."

After a recess for dinner, the court resumed at 6:30 p. m. and continued until the case was closed about 10 o'clock. The names of two witnesses were called by appellants' attorney, but they did not respond. He informed the court that they had been subpoenaed that afternoon.

"THE COURT: I am sorry but they should have been subpoenaed before this afternoon. MR. DUPUIS: And we have a witness coming on the boat from Seattle. THE COURT: I am sorry he should have come here earlier. The case was set today and the witnesses should have been here to testify when needed."

Later, a request by appellants for permission to have a bench warrant issued for their absent witnesses was denied. With this, the matter rested, and, after the respondents' rebuttal, the cause was submitted to the jury.

The appellants strongly urge that the court subjected them to undue hardship in requiring that the case be finished in one day. No formal written application for continuance was made, nor any affidavit showing what the absent witnesses would testify to if present.

The appellants' negligence being conceded, they were not, of course, prejudiced as to that issue by the absence of witnesses. As there is nothing showing that the absent witnesses were medical experts, and the issue of the extent of respondents' injuries was largely a medical one, it may be questioned whether the appellant suffered any prejudice on that score.

It appears that the judge, in arranging his calendar of his jury term, had allotted one day to this case. In protracting the trial into the night, he subjected the appellants and the attorneys to no physical hardship

that he did not himself share, as did the jury. The court must be allowed a wide discretion in such matters. It is not unusual, in the lesser counties, where there is but one judge and jury terms are short, to prolong the trial of cases into the night. In this instance, the responsibility of having their witnesses in court lay with the appellants. Their attendance could be compelled by the issue of timely subpoenas. Other than this, the appellants make no complaint of the court's conduct of the case. No exceptions were taken to the instructions given by the court, and there is every evidence that the case, even if carried on under some pressure, was fairly tried.

The judgment in favor of the respondents McQuary and Hughes is affirmed, as are the judgments of dismissal and for costs entered below against the appellants and in favor of the respondents Navy Yard Motors and L. S. Clark, who were brought in as additional defendants by the appellants.

STEINERT, C. J., MAIN, HOLCOMB, and SIMPSON, JJ., concur.