ROSLEY STUTZMAN, Appellee, v. CLARA R. YOUNKERMAN, Appellant.

**NEGLIGENCE:** Contributory Negligence—Minors—Presumption and
1  Burden of Proof. An instruction, in a personal injury action, that the burden of proof is on plaintiff to establish his freedom from contributory negligence is not nullified by an instruction that the plaintiff, if of the age of eight years only, is presumed to be in-·capable of such negligence, and that, to find to the contrary, *defendant* must so show.

**EVIDENCE:** Weight and Sufficiency—Remote Examination. Evidence
2  of the existence of marks·upon a public street and on the curb bordering thereon, several hours after an accident in question, is admissible over the objection that the evidence is too remote.

**NEW TRIAL:** Nonexcessive Verdict—$1,500 For Personal Injury. Ver-
3  dict for $1,500 for personal injury held not excessive.

Headnote 1:  29 Cyc. p. 649 (Anno.). Headnote 2:  42 C. J. p. 1224. Headnote 3:  17 C. J. p. 1107.

Headnote 1:  L. R. A. 1917F, 42; 20 R. C. L. 127.  Headnote 3:  L. R. A. 1916C, 820; 48 A. L. R. 817.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

DECEMBER 13, 1927.

Action for personal injuries sustained from being struck by defendant's automobile. Judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Kimball, Peterson, Smith & Peterson,* for appellant.

*John J. Hess,* for appellee.

MORLING, J.—The plaintiff, a girl then eight years of age, while crossing southwardly along the east side of a street intersection, was struck by defendant's automobile, coming from the west along the south side of the intersection. Plaintiff's contention is that defendant failed to keep proper lookout, and did not have her car under control. Defendant's is that plaintiff suddenly emerged from behind an automobile which was traveling westwardly, and ran into her car. Plaintiff's claim is that she was struck by defendant's right fender, just as she was ready to step on the south curb. Defendant's is that the left fender struck the plaintiff when plaintiff was about six feet from the curb. Defendant's car swerved into the curb. She contends that she swerved it, to avoid striking the plaintiff.

When plaintiff arrived at the northeast corner of the intersection, a team and wagon and an automobile were passing west. Plaintiff testifies that she "looked in the street to see if there was anything else. Then I went across the street. I walked at an ordinary gait. I was just ready to step on the curb. I did not see the automobile that struck me. I was at the hospital when I next remember anything."

Her companion testifies:

"There was a car passing, going west. Then, immediately after that car passed, she started to go across. I stood there and watched her. The car passed near the middle of the street where the wagon was. Then it was that Rosley got hit. It happened in a very few seconds."

She further testifies that plaintiff walked "straight from one sidewalk to the other. While she was walking across the street, she was just ready to step onto the curb when" defendant's car hit her. This witness says that plaintiff walked slowly, at an ordinary gait. At that time, to the rear of the wagon previously mentioned, Drake was driving a team west. He says:

"I was probably 100 feet east of the line she took in crossing the street when she started to cross. I stopped my horses when the car hit her. I was probably 50 feet from the line she took to cross when I stopped my horses."

He says:

"The little girl walked across, and she was just ready to step on the curb when the car hit her. The car came in at a sort of an angle, and hit her just as she went to step on the curb, and where the sidewalk is. She came directly across from the other sidewalk to the one on the south side of the paving. * * * She walked along at an ordinary gait. * * * A car was coming from the west, and the car, as it came across the intersection, kind of wiggled around,—they call it shimmying, I guess. It headed right into the curb where the little girl was, just ready to step onto the sidewalk at the south and east corner."

He says, "I didn't take my eyes off of her from the time she stepped onto the street until she got across the street." Also, that the car, after it struck her, ran 100 to 105 feet; that the right fender and wheel struck the child. He says that one of the wheels of the automobile scraped the curb when they first hit her; that the body was rolled right along the curb between the wheels on the right side of the car and the curbing; that he examined the tracks at that time, and noticed them afterwards; that they were right along the curb. He thought there was a white tire mark on the curb where the tire hit it. Drake's companion, Fox, says:

"The first thing I saw, I looked under the car that she was driving, and saw the little girl tumbling in the mud, and I judge it drug her about 15 feet. As near as I could tell, it was right at the crosswalk when she was struck. I didn't see her until after I saw her whirling under the car."

He says that, when he saw the little girl's body whirling, it was "right along against the curb, as near as she could be." Defendant and her companion (a niece) testified, in substance, that, as they approached the intersection, they looked in each direction; that there was another car approaching from the east, and the first they saw of the plaintiff was when she came from behind the other car on the other side of the street. The niece says:

"This little girl came from behind the other car. She was traveling fast. She was running. She ran directly in front of my aunt's car. She was about two feet in front of the car when I first saw her."

Defendant did not see her until her companion spoke. De-

fendant says that plaintiff "was just about two feet from me then. She was going south. I immediately swerved the car as quickly as possible to the curb, and tried to protect the child. *.* * I shut off the power immediately after I saw the little girl run in front of my car. I steered the car up against the curb, and then ran along the curb. I couldn't say whether the car had struck the little girl before it struck the curb or not. The left-hand fender struck the little girl. * * * There was nothing that I could have done to prevent hitting the child, the way she came in front of me. * * * I did not hit the curb until I had shut off the 'juice.' I was about three feet from the curb when I shut it off. * * * She must have been about six feet from the curb when she was struck." Defendant says that, when she swerved the car to the right, a child sitting with her fell on the two brakes, so that defendant could not get her foot on them, but tried to stop immediately. She does not testify that she had lost control of the car.

I. Defendant's first contention is that the plaintiff suddenly darted from behind the automobile passing to the west, and ran into that of the defendant, so that the defendant could not have avoided hitting her. She claims that there is no evidence of failure on her part to keep a proper lookout or to have her car under control. The question was for the jury.

II. The court charged that the law presumes a child of plaintiff's age incapable of contributory negligence, and that, before the jury would be warranted in finding that plaintiff was negligent, defendant must show that plaintiff failed to exercise the degree of care which children of a similar age ordinarily use. Defendant urges that the burden of proof was upon the plaintiff, and was not changed by the presumption. Defendant says that the age of the child "might go to the question of the sufficiency of the evidence, to some extent, but it would not wholly change the burden of proof upon the defendant." The defendant's contention is that the burden of proof on the entire case rested throughout upon the plaintiff, and that the effect of the presumption arising from plaintiff's immature years was not to shift the burden of proof, but to call upon the defendant to proceed with her evidence. The court in previous paragraphs had instructed, in substance, that, in order to entitle plaintiff to

recover, it must be shown (among other things) that plaintiff did not contribute to the happening of the accident by any want of care upon her part, and that the burden of proof was upon plaintiff to establish such fact. The instructions as a whole were correct, and not open to the objection made to them. *Brekke v. Rothermal,* 196 Iowa 1288; *Raskin v. City of Sioux City,* 198 Iowa 865; *Hazlerigg v. Dobbins,* 145 Iowa 495.

III. The accident happened at about 5:30 P. M. Plaintiff's mother was permitted to testify, over defendant's objection, that, about 10:30 P. M., she saw the wheel marks in the mud, and marks on the curb, which she described.

**2. EVIDENCE:** weight and sufficiency: remote examination.

Another witness testified, over objection, that, the next day, about 5:30, the cement was scraped off the curb; that the tracks approached the curb at an angle of about 40 degrees. It is undisputed that there was mud lying along the curb, and that defendant ran through it and into the curb. The objection made is that the later examinations were too far removed from the accident in point of time to be of any value. The evidence was admissible. Its value was for the jury. Furthermore, it was without prejudice.

IV. The verdict was for $1,500. The value of the physician's services was $200 or $300. The hospital bill was $96.70. Plaintiff sustained fractures of two bones of her leg and ankle. She was in the hospital three weeks. She was

**3. NEW TRIAL:** non-excessive verdict: $1,500 for personal injury.

unable to get about for eight weeks. She was kept out of school for five months. At the time of the trial, she was wearing an extra piece of sole leather on her shoe, prescribed by the doctor "to make her walk straight" and to prevent further curvature of the leg. She was still suffering pain intermittently. She was entitled to compensation for her pain. The verdict cannot be held to be excessive.—*Affirmed.*

EVANS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.