# GEORGE RATHS v. S. A. SHERWOOD.[1]

October 4, 1935.

No. 30,382.

[1]Reported in 262 N. W. 563.

226

 

*Stanley S. Gillam* and *Kelly, Thomas, Gillam, Morck & Dillon,* for appellant.

*Richard Converse,* for respondent.

HOLT, JUSTICE.

Plaintiff as special administrator recovered a verdict of $7,500 against defendant, S. A. Sherwood, for the death of Elmer Bahneman, alleged to have been caused by Sherwood's negligent operation of his automobile on highway No. 3, about a mile north of Newport, where the roadway is an 18-foot pavement with the customary shoulders on either side. The accident occurred around 7:30 in the evening of February 20, 1933, a cold and blustery night. There is evidence that during defendant's drive from Madison, Wisconsin, to the place of the accident sleet had been encountered so that there was ice on the headlights and windshield of his car. The deceased had purchased a span of black horses that afternoon in South St. Paul, and with the aid of his brother-in-law, Walter Raths, was taking the horses to his home, some five miles north of Newport. Each led a horse by the halter; the halters were tied together with a short rope. The deceased led the nigh horse and Walter Raths the off horse. Plaintiff's evidence tended to show that after Newport was passed and going north up to the place of the accident the men and horses traveled upon the right or east shoulder of the highway, the deceased walking nearest to the pavement and slightly ahead of the nigh horse. Sherwood in his Ford coupé overtook them. His testimony was that he was driving at about 27 miles per hour, that his headlights were lit, that he saw nothing in front of the car until a shadow passed, the car struck something, and the next moment he saw the deceased in the middle of the pavement about 15 feet in front of the car with his hands up over his head and felt a second thud against the car as he swung to the left, the car going partly into the west ditch and stopping, he claims, before it came to where the deceased lay on the pavement. He at no time

saw any horse nor observed how deceased came to fall. The autopsy showed deceased to have received a terrific blow so that his back was broken, the ribs of his left chest fractured, a rupture of the aorta, so that the thoracic cavity was filled with three quarts of blood. The road was straight and level from Newport up to and beyond where the accident occurred. There was one electric light about 400 or 500 feet south of the place of accident and one about 700 feet north thereof. The jury could find that these lights were burning, but that they had little effect on the visibility of objects at the place of the accident.

The main contention of defendant is that the court erred in denying his motion for judgment notwithstanding the verdict, his claim being that the proof fails to show actionable negligence on the part of defendant and that contributory negligence of the deceased appears as a matter of law. An attentive examination of the evidence is convincing that both these issues were for the jury. The car undoubtedly struck the nigh horse, inflicting a wound upon his left shank, when the handle of the right door was broken off, for in the break were found black horse hairs. The ornament on the radiator cap was also broken, and in the break were similar hairs. The tie rod between the headlights was bent, and a small dent or two in the radiator and one in the right front fender were all the damage to the car. Walter Raths testified that the first he knew of anything out of the ordinary, as he was leading the off horse, walking beside its right side, was when the team made a jump toward the right ditch and bolted across it. That brought the horses between him and the deceased so that he could not tell what became of the latter until the team passed by, when he saw deceased lying about the middle of the pavement some little distance ahead. The law required defendant at that time of the night to have headlights so burning that he could see persons or animals within 200 feet in front. From his testimony that he never got a glimpse of the team, struck by the front part of his car, the inference is inescapable that either his headlights did not comply with the law or that he did not keep a proper lookout. Since the car was stopped short of where deceased lay, defendant contends that he was struck down

and killed by the team and not by the car. But from all the evidence the jury could well reach the conclusion that the second impact defendant felt was when the car struck the deceased and hurled him in front. At any rate, the collision, whether with the horse or the deceased, was the proximate cause of the latter's death, and it was for the jury to determine whether or not it was caused by defendant's negligence.

There is no statute requiring persons leading an animal on the shoulders of a paved highway to carry a light after dark. It was for the jury to say whether the ordinarily prudent person would lead a span of horses after dark as deceased was doing at the place in question or would lead them upon the opposite shoulder. 3 Mason Minn. St. 1934 Supp. § 2720-48(g), leaves the question of negligence to the jury where a person drives a team after dark upon a highway without being equipped with a light.

Defendant also contends that, if not entitled to judgment *non obstante*, he should have a new trial because of errors in the trial. No extended comments need be made on the correctness of the rulings permitting witnesses who examined the *locus in quo* the morning of the next day to testify as to the tracks of horses along the shoulder of the highway and across the ditch to the right, about where the accident occurred, nor of skid tracks of a car. It is enough that such foundation as the situation permits be laid. It was for the jury to consider whether the proof justified the conclusion that the horse tracks testified to have been traced the morning after the fatal accident were those of the black team of the deceased that defendant's car struck, and whether the skid marks were made by defendant's car when he tried to stop it after the first impact, or were made later on by it when the wrecking car was pulling it back to the garage. No other ruling on the exclusion or admission of evidence merits comment. Strictures upon the conduct of plaintiff's counsel in making defendant's employer a party defendant, and alleged inquiry of jurors as to their interest in the insurer of such employer, we consider wholly uncalled for. The settled case does not contain the examination of the prospective jurors.

The special verdict finding that defendant's negligence was wilful or wanton gives us some concern. At the close of the evidence plaintiff asked and obtained leave, over defendant's objection, to amend the complaint so as to allege such negligence. Defendant's request to charge the jury that there was not sufficient evidence to support a finding of wilful or wanton negligence was refused. These rulings are assigned as errors. After the court had correctly charged the jury that the burden was upon plaintiff to prove that defendant's negligent operation of the car caused the death of plaintiff's decedent in order to recover, but that a recovery would be defeated if the negligence of the decedent contributed to cause such death and had correctly defined actionable negligence and contributory negligence, the court charged as follows:

"The plaintiff in this case, however, not only claims that the defendant was negligent, but he also claims that the defendant was wilfully and wantonly negligent. Wilful and wanton negligence is more than just mere negligence. The defendant would be responsible if he were just merely negligent. As I say, the plaintiff claims that he was more than that; that he was wilfully and wantonly negligent. Wilful or wanton negligence does not necessarily mean an operation of the mind, intending to injure anyone; it is satisfied by conduct that is reckless, regardless of the welfare and safety of those who may be around; *but if it evinces a lack of care as to what may be the consequence of any particular act, then that conduct is wilful and wanton.* With respect to that, you will find on one of the verdicts a question indicating whether or not you find the negligence of the defendant, if you find it, to have been wanton or wilful. That, however, will have no bearing upon your verdict, if you find that the defendant was negligent. That furnishes nothing additional; it is merely put in there for further consideration of the case with which you yourselves are not concerned at all. If the defendant was negligent, then the plaintiff is entitled to recover, no matter whether the negligence was wanton or whether it was just ordinary negligence."

The court made it clear to the jury that the question as to defendant's wilful or wanton negligence was not to be considered in

230

arriving at the general verdict. It was not disclosed to the jury what purpose the special verdict was to serve. Undoubtedly plaintiff's counsel and the court had in mind the effect of a subsequent discharge of defendant in bankruptcy upon the judgment plaintiff might obtain herein. Mockenhaupt v. Cordie, 181 Minn. 582, 233 N. W. 314. Under § 17(2) of the bankruptcy act, 11 USCA, § 35(2), judgments against the bankrupt for "wilful and malicious" injury to person or property are not affected by a discharge in bankruptcy. It is to be noted that the language in the bankruptcy act differs from the language in the question submitted to the jury. If such an issue is to be submitted to the jury for the purpose of saving the general verdict and judgment entered thereon from the effect of a subsequent discharge of defendant in bankruptcy, it would be well to define "wilful and malicious injury to person or property" so as to conform to the decisions of the federal courts upon that subject. In re Dutkiewicz (D. C.) 27 F. (2d) 334; In re Kubiniec (D. C.) 2 F. Supp. 632; Tinker v. Colwell, 193 U. S. 473, 24 S. Ct. 505, 48 L. ed. 754; McIntyre v. Kavanaugh, 242 U. S. 138, 37 S. Ct. 38, 61 L. ed. 205. Defendant assigned error upon the court's definition of the phrase "wilful and wanton negligence" in the motion for a new trial, and also upon this appeal. This assignment must be sustained. One of the main elements in wilful and wanton negligence, viz., knowledge or consciousness of the one charged with such negligence of the peril of the one injured in time to have, by due care, avoided the injury, was not referred to in the charge. "Wilful negligence is not simply greater negligence than that of the injured party, nor does it necessarily include the element of malice, or an actual intent to injure another; but it is a reckless disregard of the safety of the person or property of another by failing, after discovering the peril, to exercise ordinary care to prevent the impending injury." Anderson v. M. St. P. & S. S. M. Ry. Co. 103 Minn. 224, 228, 114 N. W. 1123, 1125, 14 L.R.A.(N.S.) 886. Prior decisions to the same effect are therein referred to. Among subsequent decisions touching the same subject we cite Havel v. M. & St. L. R. Co. 120 Minn. 195, 139 N. W. 137; Johnson v. D. W. & P. Ry. Co. 152 Minn. 151, 188 N. W. 221; Hinkle v. M. A. & C. R. Ry. Co.

162 Minn. 112, 202 N. W. 340, 41 A. L. R. 1377. Furthermore, the clause in the charge we have italicized defines ordinary negligence and not wilful or wanton negligence. We are clear that the jury were not adequately or correctly instructed regarding wilful and wanton negligence, and hence the special verdict or the answer to the interrogatory must be vacated. We do not think we should go further to consider whether defendant was entitled to the instruction that there is no evidence of wilful or wanton negligence. The court made it clear to the jury that such issue or question was not to be considered at all in arriving at the general verdict. There is nothing to indicate that the jury did not comply with the instruction. We therefore see no need of a new trial. The question as to whether the judgment herein will survive a discharge of defendant in bankruptcy might well be left for determination until defendant is adjudged a bankrupt. This may not happen. And if it does, it would seem that we should not now foreclose the question of whether defendant's negligence resulting in Bahneman's death was wilful and malicious by passing upon the requested instruction that there was no evidence for the jury thereon.

The judgment is affirmed, but the answer to the special interrogatory is vacated and set aside.