Sanders *v.* Walden.

4-8679                                   217 S. W. 2d 357

Opinion delivered January 31, 1949.

Rehearing denied February 28, 1949.

*J. B. Milham,* for appellant.

*Coffelt & McDonald,* for appellee.

Holt, J.   This is the second appeal in this case. Appellant, Fill C. Sanders, sued appellee, Dan F. Walden, to recover $600 damages to his automobile, alleged to have resulted from the negligence of appellee.  At the

time of the mishap and resulting damages, appellant's car was being driven by J. B. Sanders, his brother, to whom he had loaned the car. They thus occupied the position of bailor and bailee.

For a more complete statement of the facts, in addition to those added here, reference is made to our former opinion, (*Sanders* v. *Walden,* 212 Ark. 773, 207 S. W. 2d 609). On the former appeal, we reversed the judgment for error in giving an instruction. On remand, appellee amended his original answer, of general denial, and specifically alleged that ''the plaintiff himself was negligent, in that he knowingly permitted and allowed his brother, J. B. Sanders, to drive said car, knowing at the time that the said J. B. Sanders was a careless, reckless, and unsafe driver and incapable of driving said automobile as an ordinarily prudent person would drive similar automobiles upon the highways of this State.''

A jury trial resulted in a verdict for the defendant, appellee, and from the judgment is this appeal.

For reversal, appellant first argues that the trial court erred in permitting appellee to amend his answer. We cannot agree. In our opinion on the former appeal, there was the following directive: ''The judgment is reversed and the cause remanded for a new trial.''

This court in *Deason & Keith* v. *Rock,* 149 Ark. 401, 232 S. W. 583, said: ''When a cause is remanded broadly for a new trial, all the issues in the case are open for trial anew the same as if there had been no trial. On a reversal of a cause by this court, it seldom occurs that the same is remanded for a new trial; but when such is the direction by this court, then the case stands for trial precisely the same as if there had never been any trial.''

So here, the cause stood as though there had never been any trial and appellee had the right to amend his answer as indicated.

Appellant next earnestly contends that the court erred in admitting in testimony a map prepared by appellee. It appears that Mr. Walden was permitted to use, in

connection with his testimony, a map which he had prepared with pencil, which he admitted was not accurate as to scale, or measurements, but was a fair representation of the surroundings where the mishap occurred. The record reflects the following colloquy following introduction of the map: "Mr. Milham: I move to exclude all the testimony relative to the map and what the map showed, and ask that the jury be instructed not to consider it. The Court: The jury will not consider any more than what he testified to there. Objections sustained except as to that part he testified to and is not accurate as to scale. Mr. Milham: Save our exceptions to the rulings of the court."

Appellant cross-examined appellee at some length. The map though not drawn to scale appears to have been a fairly accurate reproduction of the paved highway upon which the cars in question approached each other, the intersecting street, the railroad tracks, and the paths the cars traveled.

In the circumstances, there was no error in its admission as an aid to the jury in understanding and applying the established facts.

The rule is stated in 20 Am. Jur., p. 616, § 739: "Diagrams and Drawings.—It is a well-established rule, applied in everyday practice in courts, that maps, drawings, and diagrams illustrating the scenes of a transaction and the relative location of objects, if shown to be reasonably accurate and correct, are admissible in evidence, in order to enable the court or jury to understand and apply the established facts to the particular case. The use of such things as testimony of the objects represented rests fundamentally upon the theory that they represent a method of pictorial communication of a qualified witness which he may use instead of, or in addition to, some other method. Evidence of this character is helpful in aiding the jury to visualize the objects and scenes in the action."

In *Harrelson* v. *Eureka Springs Electric Company*, 121 Ark. 269, 181 S. W. 922, there was admitted in evi-

dence, over appellant's objection, a map, or plat, prepared by a witness and an employee of the electric company, of an auditorium roof and the electric wiring in the building at the time a boy was killed. On the admissibility of the map, we there said: "The ground of the exception is that according to the statement of the witness he had made the plat after the building had been torn down and without having made actual measurements. The witness was carefully examined and cross-examined on that subject and showed an intimate knowledge of the conditions as they existed at the time plaintiff's intestate was killed. His testimony tended to show that the map was correct, and this made the map, in connection with the statements of the witness, competent testimony. The correctness of the map was a question for the jury."

Appellant next contends that the court erred in giving appellee's instruction No. 3. The effect of this instruction, as applied to this case, was that the jury could not find for the plaintiff if it found from the preponderance of the evidence that J. B. Sanders was incompetent to operate the automobile, that Fill C. Sanders knew of such incompetency, and that such incompetency of J. B. Sanders contributed to the cause of damage to the car.

The instruction was based on appellee's defense and contention that the bailee of appellant's car, his brother, J. B. Sanders, was an incompetent driver, that appellant knew this, and was negligent in loaning his brother the car in the circumstances.

The evidence tends to support appellee's contention. J. B. Sanders was a man only 4 feet 2 inches tall. The car he was driving was a 1942 model "2-door Ford sedan" and at the time of the mishap, he was going approximately forty miles per hour. He was asked: "Q. For the purpose of the record, I'll ask you how tall are you? A. Four feet two. Q. Four feet two, do you know how tall you are from your waist line up, you know about that? A. I would say about half. Q. About two feet and now when you were setting on the seat of a car could you reach the brake? A. That I could. Q. How could you

do it? A. I have got extensions. Q. Were you using them at that time? A. I wouldn't say I was or wasn't. Q. The truth of the matter, you weren't? A. I'd say I had them on there. Q. What did you say awhile ago for you didn't know? A. I didn't say I didn't know. Q. Did you have them or did you not? A. I did. Q. And the extension that you used enabled you to reach the pedals? A. Yes, sir.''

Whether the extensions were attached to his legs or the pedals of the automobile, the evidence does not disclose.

There was also evidence admitted, without objection, that a short time before the present mishap, J. B. Sanders overturned the car involved here, crushing its top and badly damaging the fenders. Whether appellant was guilty of any negligence in loaning and intrusting his automobile to his brother, in the circumstances, was for the jury, and there was no error in giving this instruction.

The rule is stated in 5 Am. Jur., p. 696, § 355, in this language: ''An owner who lends his automobile to another, knowing that the latter is an incompetent, reckless, or careless driver, is liable for such person's negligence; the owner's liability in such cases is based upon his own negligence in intrusting the automobile to such a person.''

In *Chaney* v. *Duncan*, 194 Ark. 1076, 110 S. W. 2d 21, we said: ''The rule as to the liability of a person in trusting his automobile to an incompetent person is stated in Berry on Automobiles, 7th Ed., Vol. 4, p. 710, *et seq.*, as follows: 'Aside from the relation of master and servant, the owner of an automobile may be rendered liable for injuries inflicted by its operation by one whom he *has* permitted to drive the same on the ground that such person, by reason of his want of age or experience, or his physical or mental condition, or his known habit of recklessness, is incompetent to safely operate the machine.

'' 'An automobile is a machine that is capable of doing great damage if not carefully handled, and for this reason the owner must use care in allowing others to assume control over it. . . . If the person permitted to operate the car is known to be incompetent and incapable

of properly running it, although not a child, the owner will be held accountable for the damage done, because his negligence in intrusting the car to an incompetent person is deemed to be the proximate cause of the damage. In such a case of mere permissive use, the liability of the owner would rest, not alone upon the fact of ownership, but upon the combined negligence of the owner in intrusting the machine to an incompetent driver, and of the driver in its operation.' (Citing cases.)''

Finally, appellant argues that the court erred in modifying instructions 4, 5, 6 and 7, by adding at the end of each, the following: ''Provided you further find that plaintiff himself was not negligent.''

We have carefully examined all of these instructions and hold that the court did not err in modifying them as indicated, in view of our holding that instruction No. 3, *supra,* was properly given.

The judgment is affirmed.