253 P.2d 787

McKEE et al. v. CHASE et al.
(two cases).

No. 7864.

Supreme Court of Idaho.

Feb. 20, 1953.

Anderson & Kaufman, Boise, for appellants.

Ralph R. Breshears and Elam & Burke, Boise, for respondents.

TAYLOR, Justice.

On Saturday evening, September 23, 1950, the plaintiff (appellant) Joe McKee was driving north on Cloverdale Road in a 1937 Plymouth coupe, owned by his brother, plaintiff (appellant) Welby McKee. At the same time the defendant (respondent) Chase was driving south along the same road in an International KB5 truck owned by defendant (respondent) Teeter. Chase at the time was an employee of Teeter.

A collision occurred between these two vehicles in which Joe McKee lost his left arm, which had been resting on the window sill of the left door of the coupe, and the coupe itself was badly damaged.

The action brought by Joe McKee for personal injury, and the action brought by Welby McKee for damage to his automobile, were consolidated and tried to a jury and verdicts returned for the plaintiffs in each case March 30, 1951. Thereafter, motions for a new trial were granted and the cases were again consolidated and tried November 19th and 20th, 1951. Upon this trial when plaintiffs had offered their evidence and rested, the court granted defendants' motions for judgments of nonsuit. These appeals are from the judgments entered thereon.

■ The assignments of error raise the sufficiency of plaintiffs' evidence to require the submission of the causes to the jury, and the rulings of the court in excluding certain testimony and exhibits offered. A nonsuit is justified only where there is an entire absence of substantial evidence tending to establish plaintiffs' case. Nissula v. Southern Idaho Timber P. Ass'n, 73 Idaho 37, 245 P.2d 400. In this case both drivers claim the other was driving in the center of the road. The plaintiff, Joe McKee, testified that he had just passed two other vehicles for which he had dimmed his lights, and that upon raising his lights after passing the second one, he observed the truck about 75 or 100 feet away in the

center of the road and angling toward his side thereof; that the truck was without lights; that he immediately swerved to the right to the extent that his right-hand wheels were off the paved surface and on the gravelled shoulder of the road, when the collision occurred. The evidence further tends to show that the left front corner of the bed of the truck first made contact along the left-hand door of the coupe and gouged into the body of the coupe just back of that door, and that the left front fender and wheel of the coupe were smashed by the left dual wheels of the truck.

Thus, there is substantial evidence which, if believed by the jury, would tend to show that the driver of the truck was driving in the center of the road, or with the left side of the truck beyond the center line, and that in so doing he acted negligently, and that such negligence was the proximate cause of the collision and damage.

Countering this, respondents call attention to the testimony on cross-examination of one of plaintiffs' witnesses, Yerrington (who was at the time of the collision in partnership with defendant Teeter). He testified that shortly after the collision and with the aid of a flashlight he traced the tracks made by the right-hand dual tires of the truck back along the west shoulder of the road a distance of 150 feet, which would place the truck partially off the oiled surface on its own side of the road at the point where the collision occurred. They

also point to the testimony of several of the witnesses, which places the debris resulting from the impact near the center of the road, but on the west side of the center line, and other testimony tending to establish that the headlights and clearance lights of the truck were lighted.

Such testimony merely creates a conflict in the evidence, to be resolved by the jury. The rule in this state has been long established that where there is such a conflict, or where the evidence is such that reasonable minds might reach different conclusions, the question becomes one for the jury and a nonsuit should not be granted. Burt v. Blackfoot Motor Supply Co., 67 Idaho 548, 186 P.2d 498; Stowers v. Union Pac. R. Co., 72 Idaho 87, 237 P.2d 1041; Jackman v. Hamersley, 72 Idaho 301, 240 P.2d 829; Hayward v. Yost, 72 Idaho 415, 242 P.2d 971. Moreover, this court has held that in testing the sufficiency of the evidence on a motion for a nonsuit, that version of the evidence most favorable to the plaintiff must be accepted. Finlayson v. Waller, 64 Idaho 618, 134 P.2d 1069; Hill v. Bice, 65 Idaho 167, 139 P.2d 1010.

Applied here, this would mean that the trial court was required to act upon the assumption that the jury might resolve these conflicts in favor of the plaintiffs. That is, the jury might reject the testimony of Yerrington and accept that of the plaintiff as to where the truck was at the point of impact, unless other established facts

rendered plaintiff's testimony so inherently improbable as to be unworthy of belief. It does not appear that the location of the debris would have that effect.

■ Respondents also contend that plaintiffs' evidence establishes contributory negligence on the part of Joe McKee, justifying the nonsuits. First that he was driving with his lights on dim and insufficient to render clearly discernible objects 200 feet ahead in violation of §§ 49–548, 49–550, I.C. The evidence is not conclusive as to whether appellant's lights were such as to violate the law. Hence, that was for the jury to determine. Granting that a violation of such statutes is prima facie negligence, whether it was negligence under the circumstances here shown, and, if so, whether it was the proximate cause, or a contributing proximate cause, of the injury, were questions for the jury. Brixey v. Craig, 49 Idaho 319, 288 P. 152; Dawson v. Salt Lake Hardware Co., 64 Idaho 666, 136 P.2d 733; Pittman v. Sather, 68 Idaho 29, 188 P.2d 600; Skamenca v. Reeser, 294 Ill.App. 216, 13 N.E.2d 668; Wise v. Kuehne Mfg. Co., 322 Ill.App. 26, 53 N.E.2d 711; Toth v. Perry, 120 Conn. 680, 182 A. 464; 113 A.L.R. 1263 note; 21 A.L.R.2d 21 note.

■ Second, respondents contend that Joe McKee admittedly driving with his left arm on the window sill was guilty of such negligence as to bar recovery by him. This was also a question for the jury. Petroleum Carrier Corp. v. Snyder, 5 Cir., 161 F.2d 323; Brenton v. Colbert, 305 Pa. 277, 157 A. 619; Cutrer v. Jones, La.App., 9 So.2d 859; Hobbs-Western Co. v. Carmical, 192 Ark. 59, 91 S.W.2d 605; Edwards v. Woods, 342 Mo. 1097, 119 S.W.2d 359; Bowling v. Poe, 286 Ky. 267, 150 S.W.2d 897; Baker v. Boone, 206 Ark. 823, 177 S.W.2d 756.

In view of the fact that the cases must be again tried, we will discuss the rulings of the trial court excluding evidence offered by the plaintiffs. § 1–205, I.C. One such ruling appears in the direct examination of the witness Yerrington as follows:

"Q. Did you observe any marks in the road that night, Mr. Yerrington, in the vicinity of the automobile—

"Mr. Breshears: Object to this unless something more definite is asked. What kind of marks or something that could be connected with the accident. I don't believe that question is competent. relevant or material.

"The Court: Objection sustained."

The question was later put in various forms, as follows:

"Did you observe any scars on the highway, freshly made scars on the highway in the vicinity of this accident the night you were there, Mr. Yerrington?"

"Did you observe any scars on the highway between the car and the truck that night, Mr. Yerrington?"

"Did you observe that night while you were there and examined that road, Mr. Yerrington, between the automobile as it sat in the fence, and the truck as it was parked approximately 250 feet south, any gouge marks or scars in that asphalt highway?"

"Did you observe at that time, Mr. Yerrington, any scars on the road in the vicinity of the debris?"

■■ Objections were sustained to these questions on grounds variously stated, that they called for the conclusion of the witness; surmise and conjecture as to whether the scars or marks were connected with the accident; that they were too general; and without proper foundation. The questions were proper and it was error to sustain the objections thereto. They were preliminary questions necessarily general in nature and tending to lay the foundation for a more detailed and particular location and description of the marks or scars. After such marks have been located with reference to the collision, and particularly described by the witnesses, it is for the jury to say, in the light of all the evidence, whether they were made by the vehicles involved; whether they were connected with the accident; and what conclusions, if any, are to be drawn from them in determining the issues. Thornbury v. Maley, 242 Iowa 70, 45 N.W. 2d 576; Danner v. Walters, 154 Neb. 506, 48 N.W.2d 635; Abbott v. Hayes, 92 N.H. 126, 26 A.2d 842.

Other similar rulings upon similar objections appear throughout the transcript covering the examination of other witnesses for the plaintiff as to tire marks, gouge marks, and bloodstains, observed by them. These were likewise erroneous.

■■ Objections were made to testimony of witnesses who observed such marks on Sunday, the day following the accident; on Monday, the 25th; and on Wednesday, the 27th of September (the latter being the fourth day after the accident) that such evidence was too remote. We recognize that the trial court must necessarily exercise discretion and limit the testimony to such a period of time as will reasonably remove the evidence from the field of conjecture. As to marks left by vehicles involved in a collision, the period of time between the making of the marks and their observation by the witness, beyond which testimony describing them would be conjectural, obviously depends largely on the permanency of the marks, which, in turn, depends upon the severity of the impression, the character of the surface where it is made, the prevalence or want of other traffic, climatic conditions and other surrounding circumstances. Here the testimony offered and rejected concerned bloodstains on the road, tire marks on the shoulders and in the borrow pits on both sides of the road at the scene of the accident, and located with reference to the position of both vehicles after the collision. Under the circumstances, remoteness and the possibility

of confusion with tracks made by other vehicles would affect the weight to be given to the testimony, but would not render it inadmissible. McCreedy v. Fournier, 113 Wash. 351, 194 P. 398; Flach v. Fikes, 204 Cal. 329, 267 P. 1079; Inouye v. Gilboy Co., 115 Cal.App. 25, 300 P. 835; Carr v. Duncan, 90 Cal.App.2d 282, 202 P.2d 855; Stutzman v. Younkerman, 204 Iowa 1162, 216 N.W. 627; Clark v. Reising, 341 Mo. 282, 107 S.W.2d 33; Montgomery v. Chesapeake & P. T. Co., 121 W.Va. 163, 3 S.E. 2d 58; 61 C.J.S., Motor Vehicles, § 516n(2).

■ In addition to tire marks and bloodstains, evidence was offered of gouge marks, commencing at a point just west of the center line of the road where the collision occurred, and intermittently recurring southward to where the truck stopped, over the west shoulder. After the collision, it was found that the front end of the drive shaft on the truck had been pulled off from the splined transmission shaft, and was resting on the ground beneath the truck. Also, the left rear spring, spring shackle, and spring bolt on the truck were broken. Plaintiffs' theory is that when the car struck the left dual wheels of the truck, the axle was driven back sufficiently to pull the spline joint apart, that the front end of the drive shaft then dropped, and made the gouges in the surface of the road, intermittently as it revolved and bounced from the point of impact to where the truck stopped. If this were true, it would tend to place the truck partly on the wrong side

of the center line at the point of collision. This testimony was rejected on the same grounds as noted in the examination of Yerrington, supra, and also, as to those witnesses who did not observe these gouges until Sunday, Monday, or Wednesday following, that the testimony was too remote. The record shows the surface of the road was of "liquid asphalt, oil mat;" that its surface is what is known as "armour coat, nonskid," described as a surface consisting of oil covered with rock chips or crushed rock. Obviously gouges made in that manner, in that sort of surface, would be quite permanent. In fact, one witness testified that they were still plainly visible on November 18, 1951, over a year after the accident. Also, it was established by various witnesses that the conditions at the scene of the collision as to markings and other features, concerning which testimony was offered, were the same on the Sunday, Monday, and Wednesday following, when the witnesses made their respective observations, as they were immediately after the accident. The removal of the car and truck would not be such a change in conditions as to warrant exclusion of the evidence. Williams v. Graff, 194 Md. 516, 71 A.2d 450, 23 A.L.R.2d 106; Bragg v. C. I. Whitten Transfer Co., 125 W.Va. 722, 26 S.E.2d 217.

■ The rulings of the court excluding such evidence was erroneous. Meier v. Wagner, 27 Cal.App. 579, 150 P. 797; Still v. Swanson, 175 Wash. 553, 27 P.2d 704;

Evansville Container Corp. v. McDonald, 6 Cir., 132 F.2d 80; Quinn v. Zimmer, 184 Minn. 589, 239 N.W. 902; Romann v. Bender, 190 Minn. 419, 252 N.W. 80; Raths v. Sherwood, 195 Minn. 225, 262 N.W. 563; Shennan v. Chrispens Truck Lines, 316 Ill.App. 160, 44 N.E.2d 339; Mernagh v. Lillie, 312 Mass. 697, 45 N.E.2d 473; Boyer v. Scripter, 278 App.Div. 601, 102 N.Y.S.2d 2; Opecello v. Meads, 152 Md. 29, 135 A. 488, 50 A.L.R. 1385; Sheer v. Rathje, 174 Md. 79, 197 A. 613; McWhorter Transfer Co. v. Peek, 232 Ala. 143, 167 So. 291; McPherson v. Martin, 234 Ala. 244, 174 So. 791; Wallace v. Billups, 203 Miss. 853, 33 So.2d 819; Southern Oxygen Co. v. Martin, 291 Ky. 238, 163 S.W.2d 459; Bohn v. Sams, 302 Ky. 63, 193 S.W.2d 459; Annotation 23 A.L.R.2d 112.

 Plaintiffs also offered in evidence various photographs taken on Monday and Wednesday following the collision, purporting to show marks left by the vehicles involved. These were rejected on the same grounds as the testimony of the witnesses concerning the same features. Photographs are generally admissible where the witness who identifies them testifies that they correctly portray relevant scenes or objects. Changes in the conditions portrayed between the time of the event under investigation and the taking of the photograph do not render the photograph inadmissible where the changes can be explained by the witness, and where they are not of such a character as to render the photograph deceptive. The photographs offered were properly identified, were not too remote, and should have been admitted. Edelson v. Higgins, 43 Cal.App.2d 759, 111 P.2d 668; Clark v. Fazio, 191 Or. 522, 230 P.2d 553; Wallace v. Kramer, 296 Mich. 680, 296 N.W. 838.

Plaintiffs also offered two drawings or maps, drawn by the witness E. B. McEntee, a civil engineer, from field notes taken by him in a survey of the scene of the accident on September 27th, the fourth day following the incident. These exhibits, one of them drawn to scale, give the relative location of the paved surface, borrow pits, fences, gouge marks, bloodstains, and certain tire tracks purporting to have been made by the vehicles involved. The one, Exhibit 18, also sets forth descriptive data concerning the gouge marks—that is, the length, width and depth of each in inches.

 Photographs, maps, and other drawings, are recognized as proper evidence to supplement the testimony of witnesses where the subject matter of the testimony is difficult to portray without such aids, or where the jury can be given a better understanding of the physical facts with which they are concerned. Their admission is proper to illustrate the testimony. They are also regarded as a proper means of expressing the witness' testimony. That is, a witness may be unable, by means of words or gestures alone, to convey to the jury an accurate understanding or picture of the relative position of the physical

objects or their physical characteristics, without the assistance of photographs or drawings. So, he may make a drawing or a photograph, or identify and adopt such drawing or photograph, made by another, as a means of portraying to the jury facts which are within his knowledge, and which he is not as well able to portray without such help. Williams v. Neddo, 66 Idaho 551, 163 P.2d 306; Hayward v. Yost, 72 Idaho 415, 242 P.2d 971; State v. Weston, 155 Or. 556, 64 P.2d 536, 108 A.L.R. 1402; Annotation 1415; Sanders v. Walden, 214 Ark. 523, 217 S.W.2d 357, 9 A.L.R.2d 1040; Annotation 1044. The maps in question should have been admitted. The data which we have noted on the one marked "Exhibit 18" we do not regard as of such character as to render it inadmissible within the admonition of Kleinschmidt v. Scribner, 54 Idaho 185, 30 P.2d 362. The legends here considered concern only the physical characteristics of the gouge marks. If such characteristics are confirmed by the testimony of witnesses, and the legends are not themselves issuable facts for determination by the jury, they would not render the exhibit objectionable. The apparent issue is whether or not the gouges were made at the time, by the truck, and in the manner claimed by plaintiffs; not their length, width or depth. The witness has sought to portray only the physical facts without noting thereon his conclusions from such facts. Undoubtedly, the conclusions to be drawn from such evidence will be challenged and in sharp conflict between the parties. But, so long as the exhibit purports to give only the facts within the knowledge of the witness, it is proper evidence. Mansfield v. Southern Oregon Stages, 136 Or. 669, 1 P.2d 591; Annotation 108 A.L.R. 1415; Annotation 9 A.L.R. 2d 1044.

In each instance, where the evidence offered by the plaintiffs was rejected by the court, the plaintiffs made formal offers of proof. However, such offers, under the circumstances, appear to be unnecessary because the questions to which the objections were made were sufficient to indicate the pertinency, materiality and nature of the testimony sought. In re Estate of Brown, 52 Idaho 286, 15 P.2d 604; Ball v. Stevens, 53 Idaho 111, 21 P.2d 932; Koppang v. Sevier, 106 Mont. 79, 75 P.2d 790; Peterson v. Sundt, 67 Ariz. 312, 195 P.2d 158; Chambers v. Silver, 103 Cal.App. 2d 633, 230 P.2d 146; 4 C.J.S., Appeal & Error, § 291-b(2) p. 583; 3 Am.Jur., Appeal & Error, § 354, 1952 Pocket Part, p. 12.

We note, too, that two witnesses qualified as experts by experience and training in the operation and repair of International trucks, such as the one involved here, were not permitted to give their opinion as to the cause of the dropping of the front end of the drive shaft. Apparently it is the theory of the plaintiffs that it dropped when the dual wheels were struck by the car, and as a result thereof; the defendants' theory being that it dropped when the brakes were applied where the

truck came to rest. This appears to have been a proper subject of testimony by experts. 32 C.J.S., Evidence, § 533b. The witnesses were qualified at length. Perhaps not all, but at least some of the hypothetical questions propounded, contain a fair statement of the pertinent facts in evidence. Willis v. Western Hospital Ass'n, 67 Idaho 435, 182 P.2d 950; 32 C.J.S., Evidence, § 551–b(2). The witnesses should have been allowed to answer.

The judgments appealed from are reversed and the causes are remanded for a new trial.

Costs to appellants.

PORTER, C. J., and GIVENS and KEETON, JJ., and BAKER, District Judge, concur.