392 P.2d 430

**Charles R. ALLEN, Plaintiff-Appellant, Cross-Respondent,**

**v.**

**Edna DURFEE, Personal representative of L. J. Durfee, deceased, Defendant-Respondent, Cross-Appellant.**

**No. 9360.**

Supreme Court of Idaho.

May 22, 1964.

Earl E. Walker, Twin Falls, for appellant.

Hepworth & Nungester, Buhl, for respondent.

TAYLOR, Justice.

Plaintiff (appellant) brought this action to recover $5,346.40, alleged balance due upon an oral contract for feeding cattle for defendant (respondent). Defendant by counterclaim sought and recovered $646.32 for overpayment and damages.

A pretrial order, approved by counsel for both parties, recites that the parties entered into an oral contract in November, 1961, whereby plaintiff agreed to feed and care for certain Holstein heifers for the defendant for which plaintiff was to be

compensated on the basis of 20¢ per pound of gain in weight of the cattle; that 156 head of cattle were delivered to plaintiff on November 16, 1961, and four additional head on May 18, 1962; that defendant paid to plaintiff, on or about April 10, 1962, on account, the sum of $4,680.00; and that on or about May 23, 1962, the cattle were returned to defendant.

Plaintiff testified that, by the terms of the original agreement, he was to retain possession of the heifers until they were bred and ready for shipment as "heavy springers"; that about March 15, 1962, defendant requested return of the cattle, which plaintiff refused on the ground that the cattle had not been bred and were not ready for shipment as heavy springers, and in that respect the contract had not been complied with; that he then agreed to deliver possession if defendant would compensate him, at the rate of 33¢ per head per day, for the time he had cared for the cattle; that defendant did not take the cattle at that time, but agreed to pay 33¢ per head per day, for the time the cattle were in plaintiff's care; and that the contract was modified accordingly.

Defendant testified that the original agreement was never modified; that according to its terms he was entitled to have the cattle returned at any time, upon request; that there was no agreement that the cattle should be bred and prepared for shipment as heavy springers; that the $4,-680.00 paid by him to plaintiff was based upon an estimated gain of one pound per head per day; that when the cattle were returned to him about May 23, 1962, at his request, they had not gained in weight sufficient to entitle plaintiff to the amount estimated in April, but had in fact gained only 21,253 pounds which, at 20¢ per pound, amounted to $4,250.60, resulting in an overpayment of $429.40; that if the cattle had been properly fed and handled they would have gained an average of not less than 1½ pounds per head per day; that by defendant's contract with the owner, defendant was to be paid 21¢ per pound of gain, or a profit to defendant of 1¢ per pound after paying 20¢ per pound to the plaintiff; that plaintiff did not properly feed and care for the cattle, by reason of such neglect on his part, the cattle did not gain an average of 1½ pounds per head per day, resulting in a loss to defendant of $216.94.

The cause was tried to a jury. A verdict was returned, in favor of the defendant, upon which judgment was entered for the sum of $646.32 on his counterclaim.

█ By his first assignment of error plaintiff contends the court erred in admitting in evidence defendant's exhibits 1 and 2. Exhibit 1 consisted of the "weigh slips" purporting to be the scale record of the weight of the cattle delivered to plaintiff; and exhibit 2 consisted of weigh slips purporting to be the scale record of the weight of the cattle when returned to defendant.

As to these exhibits, the pretrial order recites:

"* * * the authenticity of these exhibits has been stipulated but they have been received subject to objections by the opposing party, if any, at the trial, to their relevancy and materiality."

When exhibit 1 was offered at the trial, plaintiff objected on the ground that it was not shown that the weights evidenced thereby were of the cattle involved. The objection was considered at the next ensuing recess in the absence of the jury. The following occurred between court and counsel:

"Mr. Hepworth [defendant's counsel]: It may be recalled by Mr. Walker [plaintiff's counsel] and the Court when arrangements for the pre-trial conference were made, one of the stated purposes was to have these white slips identified and admitted in order to avoid bringing Mr. Wagner's employees over from Twin Falls. The pre-trial order was made as read by the Court. That has been more than two months ago, and no objection has yet been heard until now from Mr. Walker, and I would think to deny their admittance now on the basis they are not properly identified would be to give unfair advantage to Mr. Allen and I think contrary to our rules of pre-trial conference.

"The Court: Mr. Walker, if you would follow me. I will read this to you. 'Defendant's exhibits—15 weight slips showing the weight of the cattle delivered to the plaintiff and returned to the defendant by the plaintiff.' Now, a copy of this was sent you, and I wrote because you had been ill, and told you I would give you time to object to these, and you wrote back and said you would like to confirm these with your client and would advise the Court if not acceptable. I relied upon that, and I am sure counsel for the defendant did. I still don't want to tie your hands. If you have any evidence to show these are not the proper weight slips of the cattle in and out and positive testimony that there was any skulduggery back and forth or shifting of cattle from the time they were weighed in and out, I will give you the right to present that, but I don't think I should shift the burden. Do you understand the Court's position?

"Mr. Walker: I understand."

Defendant's counsel then asked if any evidence attacking the genuineness of the exhibits was to be offered by plaintiff, that it be presented "today," stating as a reason for the request that he would have to call several of the owner's drivers over from Twin Falls.

Plaintiff then called a witness, whom he attempted to qualify as an expert, for the purpose of eliciting testimony as to what similar cattle would reasonably be estimated to gain per day on a feed lot. The court sustained objections to the competency and materiality of the evidence offered and plaintiff did not pursue the issue further. Defendant contends plaintiff was precluded from urging his objection because he had stipulated to the "authenticity" of the exhibits, as shown by the pretrial order, and plaintiff countered that he had preserved his right to object on the ground of "materiality." There may well have been some confusion in the minds of the court and counsel as to the effect of the stipulation. "Authenticity" would imply that the weigh slips pertained to the cattle in question. If the exhibits were authentic they were material and admissible, even though errors or other defects may have been shown therein. Furthermore, the court and counsel could well have understood plaintiff's reservation of his objection on the ground of relevancy and materiality to be in keeping with, and necessitated by, the theory of his complaint that the contract had been modified to provide that he was to be compensated on the basis of 33¢ per head per day, in which case, the weight of the cattle would be immaterial.

Counsel for plaintiff not being present at the pretrial conference the court wrote to him advising that he would have time to make objection to the weigh slips and plaintiff's counsel answered that he would "confirm" the weigh slips with his client and advise the court if they were not acceptable. His failure to so advise, apparently led the court and opposing counsel to believe that he would make no objection at the trial to the genuineness of the exhibits. As a result, counsel for defendant appeared at the trial without the presence of available witnesses to identify the weigh slips. Under such circumstances plaintiff cannot be heard to complain that defendant did not further identify them. Moreover, plaintiff testified that shortly after the cattle were delivered to him, he was presented with weigh slips purporting to show the weight of the cattle delivered. Having accepted the cattle upon an agreement to be reimbursed on the basis of gain in weight, it was his business to be informed as to their weight when received, and to ascertain whether the weight, represented by the weigh slips given him, was correct.

By his second assignment of error, plaintiff contends the court erred "in permitting the defendant, over plaintiff's objection, to introduce evidence as to breeding pens and breeding practices, for the reason that there was nothing in the pleadings or the evidence, justifying such testimony, and that the same was confusing and

misleading to the jury." The evidence tended to show that plaintiff was not equipped to handle breeding of the cattle, and in connection with plaintiff's assertion that defendant knew the conditions on plaintiff's farm, would tend to rebut plaintiff's testimony that there was an agreement that the cattle were to be bred and prepared for shipment as heavy springers. Thus, the evidence was material to an issue involved and was properly admitted. Mountain States Telephone & Telegraph Co. v. Jones, 76 Idaho 241, 280 P.2d 1067; Williams v. Idaho Potato Starch Co., 73 Idaho 13, 245 P.2d 1045.

██ Plaintiff assigns as error the admission of testimony as to feeding and feeding practices. The evidence was admissible on the defendant's counterclaim for damages arising from alleged improper feeding and handling of the cattle. Plaintiff also complains of the action of the court in permitting cross-examination of the plaintiff as to fences, breeding pens, and breeding practices, on the ground that the subject matter was not within the scope of the pleadings or brought out on his direct examination. The evidence had a bearing on the issue as to whether there was an agreement for the breeding of the cattle. Plaintiff had testified on direct examination that the agreement did provide for breeding of the cattle while in his possession, and this he also alleged in his complaint.

██ Pictures, purporting to be of plaintiff's corrals, were admitted over plaintiff's objection that they were not material and that no proper foundation was laid for their admission. As to materiality, the pictures had a bearing upon the issue as to breeding of the cattle and upon defendant's counterclaim for damages. As to foundation, the witness Keith testified he was familiar with the corrals during the time plaintiff had possession of the cattle and that the photographs were a fair representation of the corrals as they appeared at that time. This was a sufficient foundation. Howard v. Missman, 81 Idaho 82, 89, 337 P.2d 592; McKee v. Chase, 73 Idaho 491, 501, 253 P.2d 787.

██ Lastly plaintiff urges that the verdict of the jury was not supported by the evidence. The jury's verdict consisted of its answers to two interrogatories as follows:

"Was the parties' original agreement as follows:

"That the cattle should be left with the plaintiff, Charles R. Allen, until their return was asked for by Mr. Durfee for the agreed price of twenty cents per pound gain?

"Yes    Yes

"No    ——."

"Would the cattle, if they had been properly fed, handled, and cared for,

have gained an average of at least one and a half pounds per head per day?

"Yes   Yes

"No   ——."

As noted, the evidence of the parties was in direct conflict. That produced by defendant was accepted by the jury. It was substantial and competent. The verdict thereon will not be set aside. I.C. § 13-219.

Judgment affirmed.

Costs to respondent.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.