## ARKANSAS STATE HIGHWAY COMM. *v.*
## HERMAN KAUFMAN ET AL

5-4586                                    428 S. W. 2d 251

### Opinion delivered June 3, 1968

*Thomas B. Keys* and *Virginia Tackett,* for appellant.

*Gordon, Gordon & Eddy,* for appellees.

GEORGE ROSE SMITH, Justice. In 1964, the appellees, Herman Kaufman and Nathan Gordon, acquired a 3,-775-acre tract of land in Conway county, with the intention of eventually using it as a cattle ranch. Two years later the Highway Commission brought this action to condemn two parcels in the tract, one of 15.53 acres and the other of 8.29 acres, for use in the construction of Interstate Highway 40. The jury fixed the landowners' compensation at $35,000, of which not less than $32,000 must be apportioned under the evidence to the larger parcel. For reversal the Commission contends that the $32,000 award is excessive and that the court erred in allowing the jury to consider a diagram which Kaufman had prepared to assist him in testifying.

After a careful study of the record we are unable to say that the award is demonstrably excessive. The

appellees paid $148,640 for the 3,775-acre tract, but they are unquestionably right in saying that they got it at a tremendous bargain. Between the date of their purchase and the date of trial they had received $78,980.65 from the sale of timber on the land. An estimated $70,000 worth of timber was still to be cut. Even the lowest estimate of value made by the Highway Commission's expert witnesses was $234,500. When that figure is increased by the timber proceeds already received the purchase had shown a worth of more than $300,000 by the time of trial. The landowners' witnesses put the figure at more than $400,000.

The interstate highway will cross a neck of land, containing 123 acres, which would otherwise provide access to U. S. Highway 64 and to the Missouri Pacific railroad track, which could serve the cattle ranch by means of a spur. Construction of Interstate 40 will cut the 123-acre tract in two, destroying the ranch's access to the highway and railroad and reducing the tract's usable area so materially that it cannot be used as the headquarters for the proposed ranch.

An adequate site for a headquarters is admittedly essential to the operation of a large cattle ranch. Much of the landowners' testimony went to prove that the 123-acre neck of land was by far the most suitable site for a headquarters. Its relatively high elevation is shown to be an important and desirable element in the selection of such a site. An ample supply of water is readily available there. We have already mentioned its previous access, now denied, to transportation facilities. A number of photographs in the record confirm the witnesses' description of the parcel as a desirable, comparatively level site for the headquarters.

Expert witnesses, some of them experienced in the operation of cattle ranches, enumerated their reasons for believing that the loss of the 123-acre site seriously reduced the value of the entire 3,337-acre tract as a pros-

pective cattle ranch. Those witnesses fixed the landowners' damages at from $38,475 to more than $56,000. The two expert witnesses for the Highway Department were not shown to be experienced in appraising ranch lands and really made no effort to rebut the landowners' proof. On the record as a whole it cannot be said that there is no substantial evidence to support the $32,000 award.

The appellant's other point for reversal challenges the admissibility of a simple line drawing that Kaufman used in his testimony. The diagram was intended to show how the 123-acre site, consisting of a somewhat narrow rectangle leading to the railroad and existing highway, could have been used as an efficient ranch headquarters. The drawing, which is about as simple as one could imagine, depicts a central lane running the length of the site. It provides access to the transportation facilities at one end and to the rest of the ranch at the other. On each side of the lane Kaufman drew rectangles that were labeled as feed lots, holding areas, corrals, and a storage area. Kaufman used the drawing in explaining to the jury how the cattle could be funneled into the headquarters area, be kept in pens where they could be efficiently fed by means of an auger feeder, and eventually be moved into loading chutes for shipment.

In objecting to the use of the diagram counsel for the appellant refer to several condemnation cases, including some of those reviewed recently in *Housing Authority of the City of Camden* v. *Reeves,* 244 Ark. 783, 427 S. W. 2d 196 (1968). Those cases considered the admissibility of lot-and-block plats of residential subdivisions that existed in some instances on paper only. In several cases such plats were ruled out, either because they did not take into account the expense of bringing in streets or utility lines or because they might influence the jury to value raw acreage as if it were already divided into salable building lots.

The exclusionary principle underlying those deci-

sions has no application here. Kaufman's drawing was not intended as a basis for the assignment of values to the various enclosures that were sketched. Those enclosures were nearly all mere spaces defined by lines that represented fences. The sole purpose of the diagram was to enable the jury to see how the rectangular 123-acre parcel could be used as a site for the ranch headquarters. That the witness admitted that the site might not have been completed for as much as ten years is immaterial, because Kaufman was merely explaining *how* the site could be used. (He added that he had been building on his own nearby ranch for 40 years and still hadn't completed it.)

By analogy, we have held in a condemnation case that the landowner was entitled to show that his property on a river bank possessed superior advantages as a bridge site. *Little Rock Junction Ry.* v. *Woodruff,* 49 Ark. 381, 5 S. W. 792, 4 Am. St. Rep. 51 (1887). So here, Kaufman was properly allowed to explain the particular suitability of the parcel as a site for the necessary ranch headquarters. In that connection the use of the drawing to present to the jury a graphic explanation that would otherwise have been conveyed to them by Kaufman's admissible oral testimony falls within familiar principles governing the use of plats, diagrams, sketches, and the like as aids to a witness's testimony. See *Sanders* v. *Walden,* 214 Ark. 523, 217 S. W. 2d 357, 9 A. L. R. 2d 1040 (1949); *Howell* v. *Baskins,* 213 Ark. 665, 212 S. W. 2d 353 (1948). We find no error in the court's ruling.

Affirmed.

Brown, Jones and Byrd, JJ., dissent.

Conley Byrd, Justice, dissenting. Since the verdict was, to say the least, ultraliberal, I can only conclude that the landowners' utopian map served to produce liberality. The map demonstrated neither the present

condition of the farm nor that commonly in use by farms similarly situated—only Mr. Kaufman's ten-year dream was demonstrated by the plat.

To me the plat dripped of speculation and produced prejudice.

I would reverse.

BROWN, J., joins in this dissent.

J. FRED JONES, Justice, dissenting. In the acquisition of right-of-way for interstate highway purposes, I cannot, in good conscience, bring myself to approve a judgment in damages, to what I consider to be, a mere disturbance of some future cattleman's dream of a utopian cattle spread.

The money award in this case, was for damage to every acre in a large tract of old fields and timber land because the right-of-way crossed a corner of the tract most suitable and convenient for the elaborate headquarters of a hugh cattle ranching operation, if, and when, anyone owning the land, should have the desire, ambition, know-how and cash assets, to develop the land into such cattle ranch the appellees visualize as possible. I consider the damages entirely speculative, and I would reverse.